UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

**SYLVESTER MARTIN**                                **CIVIL ACTION**

**VERSUS**                                          **NO. 11-726-DEK**

**LT. RONNIE SEAL, ET AL.**

## ORDER AND REASONS

Plaintiff, Sylvester Martin, filed this *pro se* and *in forma pauperis* complaint against Ronnie Seal, David Alford, Clifford Turner, Bruce Stewart, Bruce Forbes, Wendy Seal, Kimberly Warner, Dr. Dennis LaRavia, and Warden Robert Tanner. Plaintiff asserts that the defendants violated his rights under both federal and state law during his incarceration at the B.B. "Sixty" Rayburn Correctional Center.

The defendants have filed a motion for summary judgment pursuant to Fed.R.Civ.P. 56.[1] Plaintiff has opposed that motion,[2] and the defendants have filed a reply memorandum addressing that opposition.[3] The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge.[4]

---

[1] Rec. Doc. 34.

[2] Rec. Doc. 37.

[3] Rec. Doc. 42.

[4] Rec. Doc. 14.

## I. Summary Judgment Standards

The principal purpose of Rule 56 is to isolate and dispose of factually unsupported claims. Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986). In reviewing a motion for summary judgment, the Court may grant the motion when no genuine issue of material fact exists and the mover is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). There is no "genuine issue" when the record taken as a whole could not lead a rational trier of fact to find for the nonmovant. Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

"Procedurally, the party moving for summary judgment bears the initial burden of informing the district court of the basis for its motion, and identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact." Taita Chemical Co., Ltd. v. Westlake Styrene Corp., 246 F.3d 377, 385 (5th Cir. 2001) (quotation marks and brackets omitted). The party opposing summary judgment must then "go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Celotex, 477 U.S. at 324 (quoting Fed.R.Civ.P. 56); see also Provident Life and Accident Ins. Co. v. Goel, 274 F.3d 984, 991 (5th Cir. 2001). The Court has no duty to search the record for evidence to support a party's opposition to summary judgment; rather, "[t]he party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which the evidence supports his or her claim." Ragas v. Tennessee Gas Pipeline Co., 136 F.3d 455, 458 (5th Cir. 1998). Conclusory statements, speculation, and unsubstantiated assertions are not competent summary judgment

evidence and will not suffice to defeat a properly supported motion for summary judgment. Id.; Douglass v. United Servs. Auto Ass'n, 79 F.3d 1415, 1429 (5th Cir. 1996).

## II. Plaintiff's Federal Claims

Plaintiff asserts various federal claims against the defendants. Those federal claims are brought pursuant to 42 U.S.C. § 1983, which provides, in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress ....

42 U.S.C. § 1983.

To the extent that plaintiff is seeking monetary damages against the defendants in their official capacities, the defendants are clearly entitled to summary judgment with respect to such federal claims. All of the defendants are employed at the B.B. "Sixty" Rayburn Correctional Center and, therefore, are officials or employees of the Louisiana Department of Public Safety and Corrections. See, e.g., Tyson v. Reed, Civ. Action No. 09-7619, 2010 WL 360362, at *4 (E.D. La. Jan. 21, 2010); Demouchet v. Rayburn Correctional Center, Civ. Action No. 07-1694, 2008 WL 2018294, at *3 (E.D. La. May 8, 2008). State officials and employees sued in their official capacities for monetary damages are not "persons" subject to suit under 42 U.S.C. § 1983. Will v. Michigan Department of State Police, 491 U.S. 58, 71 (1989); Stotter v. University of Texas, 508 F.3d 812, 821 (5th Cir. 2007); American Civil Liberties Union v. Blanco, 523 F. Supp. 2d 476, 479 (E.D. La. 2007); Tyson, 2010 WL 360362, at *4; Searls v. Louisiana, Civ. Action No. 08-4050, 2009 WL 653043, at *6 (E.D. La. Jan. 21, 2009); Demouchet, 2008 WL 2018294, at *3.

Moreover, such claims also fail for an additional reason. Because a claim against a state official or employee in his official capacity for monetary damages is actually a claim against the state itself, such claims are barred by the Eleventh Amendment. Williams v. Thomas, 169 Fed. App'x 285, 286 (5th Cir. 2006); Tyson, 2010 WL 360362, at *4; Searls, 2009 WL 653043, at *6; Demouchet, 2008 WL 2018294, at *3.

As to plaintiff's federal claims against the defendants in their individual capacities or in any capacity for declaratory or injunctive relief,[5] the Court finds as follows.

A. Placement on Suicide Watch

Plaintiff's first claim is that his rights were violated when he was placed on suicide watch by Kimberly Warner without an adequate evaluation. However, the records reflect that Lt. Ronnie Seal reported that plaintiff was making statements indicating that he was suicidal.[6] Although plaintiff contends that the reports by Seal were untrue, there is no evidence whatsoever that Warner had any reason to believe that they were untrue. As a result, this Court cannot say that Warner's actions were unconstitutional in light of the reports she received. On the contrary, someone in Warner's position would be expected to err on the side of caution in such matters. Indeed, if she had ignored such reports and plaintiff had in fact committed suicide, she could have been held liable for

---

[5] A state official or employee sued in his official capacity is considered a "person" with respect to a § 1983 claim for relief which is declaratory or injunctive in nature and prospective in effect. Stotter, 508 F.3d at 821; American Civil Liberties Union, 523 F.Supp.2d at 479. Further, the Eleventh Amendment does not bar such a claim. Aguilar v. Texas Department of Criminal Justice, 160 F.3d 1052, 1054 (5th Cir. 1998).

[6] See, e.g., Rec. Doc. 34-4, p. 3 (Mental Health Behavioral Checklist completed by Seal in which he stated that plaintiff "made statement to all of security and all of Sleet 3R that he was suicidal and that he was going to kill his self.").

failing to place him on suicide watch. See, e.g., Evans v. City of Marlin, Texas, 986 F.2d 104, 107 (5th Cir. 1993); Lewis v. Parish of Terrebonne, 894 F.2d 142, 145-46 (5th Cir. 1990). Moreover, the records reflect that plaintiff was removed from suicide watch at 8:55 a.m. on December 16, 2010, less than two days after he was first placed on the watch.[7] Even if placing a prisoner in a suicide-watch cell could in some circumstances constitute a significant and atypical deprivation as required for a due process violation,[8] such was not the case here. Warner had reason to believe that plaintiff

---

[7] Rec. Doc. 34-4, p. 1.

[8] Some courts have ruled that such claims are generally precluded by Sandin v. Connor, 515 U.S. 472 (1995). For example, faced with a similar claim, United States District Judge Terry R. Means held:

> Lewis complains that defendant Olds ordered him to be placed in a solitary suicide-watch cell without probable cause, which is treated as a claim that he was placed in administrative segregation without due process of law. The Fourteenth Amendment to the Constitution provides that no State shall "deprive any person of life, liberty, or property without due process of law." Thus, the Court must first determine whether a property or liberty interest exists that is entitled to due-process protection. But, an inmate has neither a protected property nor liberty interest in his custody classification. Furthermore, a prisoner's liberty interest is "generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." In Sandin v. Connor, the Court held that a prisoner's "discipline in segregated confinement did not present the type of atypical, significant deprivation in which a state might conceivably create a liberty interest." In light of Sandin, the Court of Appeals for the Fifth Circuit held that, "administrative segregation, without more, simply does not constitute a deprivation of a constitutionally cognizable liberty interest." Controlled by these precedents, Lewis's placement in suicide-watch segregation as stated in the complaint does not rise to the level of an atypical and significant hardship. Thus, Lewis's due-process claim based upon the suicide-watch cell placement has no arguable basis in law, and must be dismissed.

Lewis v. Olds, Civ. Action No. 4:08-CV-495, 2009 WL 186226, at *1 (N.D. Tex. Jan. 26, 2009) (footnotes omitted). Accord Morris v. Winn Correctional Center, No. 08-CV-1488, 2009 WL

5

was suicidal and her decision to place him on a watch for a brief period of time in order to determine whether he was in fact suicidal simply is not so beyond the pale as to violate the federal constitution.

### B. Excessive Force

Plaintiff next claims that his federal constitutional rights were violated by Ronnie Seal's use of chemical agents on December 14, 2010.[9] Without question, it is unconstitutional for a prison guard to use excessive force against an inmate. It is clear that the use of even *de minimis* force, including the use of chemical sprays, can support an excessive force claim. Thomas v. Comstock, 222 Fed. App'x 439, 442 (5th Cir. 2007).

"[W]henever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry is ... whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Hudson v. McMillian, 503 U.S. 1, 6 (1992) (quotation marks omitted). Only in the latter instance will the force be considered unconstitutionally excessive. Here, however, questions remain as to whether *any* use of force was required. Plaintiff was already secured in a one-man suicide-watch cell. Moreover, no video surveillance recordings have been provided showing the circumstances which led to the first use (or first two uses, depending on whether there were two or three separate incidents) of the chemical spray. Under these circumstances, a disputed issue of fact remains as to whether Seal used the chemical spray to maintain or restore discipline as he contends,

---

2391844, at *2-3 (W.D. La. Aug. 4, 2009); Rogers v. Paquet, No. 3:01-CV-0969, 2001 WL 1148256, at *3 (N.D. Tex. Sept. 18, 2001).

[9] The parties appear to disagree as to whether the chemical agents were used on two or three separate occasions on that date.

or maliciously and sadistically to cause harm as plaintiff contends. Accordingly, it is not appropriate to grant summary judgment with respect to the excessive force claim against Seal.[10]

### C. Right to Privacy

Plaintiff next claims that his right to privacy was violated because he was naked during a medical examination by nurse Wendy Seal after the use of the chemical spray.

As a preliminary matter, the records in this case disprove plaintiff's underlying factual allegations. Wendy Seal's medical report clearly states that, at the time of her examination, plaintiff was on the floor with a "blanket over private area placed by security."[11] Moreover, the video records provided corroborate the statement that plaintiff was covered by a blanket.[12]

In any event, even if plaintiff had been naked, which he was not, there still would be no actionable federal constitutional violation. Any right to privacy, including the right to bodily privacy, retained by prisoners is minimal at best. Oliver v. Scott, 276 F.3d 736, 744-45 (5th Cir. 2002). For example, cross-sex surveillance, such as when female guards observe male inmates taking showers or during strip searches, does not violate the federal constitution. Id. at 746; Letcher v. Turner, 968 F.2d 508 (5th Cir. 1992); Davis v. Chairman, Texas Board of Criminal Justice, Civ. Action No. 6:10cv646, 2011 WL 2600900, at *1-2 (E.D. Tex. May 27, 2011), adopted, 2011 WL

---

[10] It is unclear whether Sgt. David Alford and Sgt. Clifford Turner were intended as defendants with respect to the excessive force claim. However, even if they were, any such claim against them must be dismissed. Based on plaintiff's allegations, it is clear that Seal alone used the chemical spray, and there are no allegations of other types of excessive force directly employed by either Alford or Turner.

[11] Rec. Doc. 34-3, p. 3.

[12] Rec. Doc. 35 (Manual Attachment), Disc No. 2.

2669327 (E.D. Tex. July 6, 2011); Johnson v. Cheney, No. 2:07-CV-0004, 2007 WL 293936 (N.D. Tex. Jan. 30, 2007). Generally, a prisoner's right to bodily privacy is not violated when the challenged action was taken "to protect a legitimate government interest." See Letcher, 968 F.2d at 510. Clearly, providing an allegedly injured inmate with a medical examination protects a legitimate government interest. Moreover, it is beyond cavil that nudity during medical examinations is common, regardless of whether the patient and the health care practitioner are of the same sex. Therefore, even if plaintiff was nude during the medical procedures at issue, the Court finds that there simply was no violation of his right to privacy. See Tinius v. Carroll County Sheriff Department, 321 F. Supp. 2d 1064, 1084 (N.D. Iowa 2004); Jackson v. Wiley, 352 F. Supp. 2d 666, 682 (E.D. Va. 2004) ("Male and female medical professionals customarily examine individuals of the opposite sex, and such behavior has not been found to constitute a constitutional violation."), aff'd, 103 Fed. App'x 505 (4th Cir. 2004).

### D. First Amendment

Plaintiff also complains that his rights were violated because he did not have the ability to correspond with "the court, family, friends and State and Federal Agencies"[13] while he was on suicide watch. This claim was not expressly addressed by the defendants in their motion. However,

---

[13] Rec. Doc. 1, p. 7.

pursuant to its authority to act *sua sponte* under 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b),[14] the Court hereby dismisses the claim as frivolous for the following reasons.

Based on plaintiff's allegations, the Court assumes that he is contending that he was denied access to writing materials for correspondence while on suicide watch. If so, it is true that prison mail restrictions are not immune to constitutional scrutiny. Daigre v. Maggio, 719 F.2d 1310, 1313 (5th Cir. 1983). That said, when reviewing such restrictions, courts "inquire first, whether restrictions further an important or substantial government interest and second, whether the

---

[14] With respect to actions filed *in forma pauperis*, such as the instant lawsuit, federal law provides:

> Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that ... the action or appeal –
>
> > (i) is frivolous or malicious;
> > (ii) fails to state a claim on which relief may be granted; or
> > (iii) seeks monetary damages against a defendant who is immune from such relief.

28 U.S.C. § 1915(e)(2)(B).

Moreover, federal law further mandates that federal courts "review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity." 28 U.S.C. § 1915A(a). Regarding such lawsuits, federal law requires:

> On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint –
>
> > (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or
> > (2) seeks monetary relief from a defendant who is immune from such relief.

28 U.S.C. § 1915A(b).

restrictions are greater than necessary or essential to protect that interest." Id. The government, of course, has an important and substantial government interest in protecting inmates on suicide watch from harming themselves. As a result, prisoners on suicide watch are routinely and appropriately denied access to objects which they could use to injure themselves. It takes no great insight to find that writing instruments could be used as instruments for self-harm. See, e.g., Corely v. Prator, 290 Fed. App'x 749, 751 (5th Cir. 2008) (inmate tried to commit suicide by stabbing herself in the chest and eyes with ink pens). Therefore, denial of such objects to such prisoners is obviously essential.

If an inmate is on such a watch for a prolonged time, then, of course, some accommodation would be necessary, in that prisoners generally must be allowed to communicate with the outside world and seek redress for grievances. However, it is not necessary to determine the contours of such accommodations here, in that plaintiff was on suicide watch for less than two days and no harm resulted from the brief delay in his ability to correspond with others.

### E. Inadequate Medical Care

Plaintiff next claims that he was not provided with adequate medical care. It is clear that a prisoner's constitutional rights may be violated if his *serious medical needs* are met with *deliberate indifference* on the part of penal authorities. See, e.g., Harris v. Hegmann, 198 F.3d 153, 159 (5th Cir. 1999). The United States Fifth Circuit Court of Appeals has explained that "[a] serious medical need is one for which treatment has been recommended or for which the need is so apparent that even laymen would recognize that care is required." Gobert v. Caldwell, 463 F.3d 339, 345 n.12 (5th Cir. 2006). Regarding the deliberate indifference requirement, the United States Fifth Circuit Court of Appeals has explained:

> Deliberate indifference is an extremely high standard to meet. It is indisputable that an incorrect diagnosis by prison medical personnel does not suffice to state a claim for deliberate indifference. Rather, the plaintiff must show that officials refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs. Furthermore, the decision whether to provide additional treatment is a classic example of a matter for medical judgment. And, the failure to alleviate a significant risk that the official should have perceived, but did not is insufficient to show deliberate indifference.

Domino v. Texas Department of Criminal Justice, 239 F.3d 752, 756 (5th Cir. 2001) (quotation marks, brackets, and citations omitted). "Deliberate indifference encompasses only unnecessary and wanton infliction of pain repugnant to the conscience of mankind." McCormick v. Stalder, 105 F.3d 1059, 1061 (5th Cir. 1997); see also Stewart v. Murphy, 174 F.3d 530, 534 (5th Cir. 1999).

Plaintiff first claims that his rights were violated when Bruce Forbes and Wendy Seal denied him adequate medical care after the chemical sprays. That claim fails. First, it is questionable whether plaintiff experienced a "serious medical need" as a result of the spraying. The medical records indicate that he did not,[15] and the video records show that plaintiff was back on his feet and quite hale and hearty soon after the sprayings.[16] Nevertheless, even if there was a serious medical need, there is no evidence that Bruce Forbes and Wendy Seal acted with deliberate indifference. Plaintiff's allegation that they failed to examine him after the incidents is simply untrue. Both the

---

[15] Rec. Doc. 34-3, pp. 3-4.

[16] Rec. Doc. 35 (Manual Attachment), Disc No. 3.

written medical records[17] and the video records[18] show that he was examined after the sprayings and was determined to be fine.

To the extent that plaintiff is contending that those examinations were not sufficiently thorough or that the conclusions drawn were incorrect, those contentions, even if accurate, are of no moment. The fact that an inmate's medical care "may not have been the best money could buy" is insufficient to establish a federal violation. Mayweather v. Foti, 958 F.2d 91 (5th Cir. 1992); see also Gobert v. Caldwell, 463 F.3d 339, 349 (5th Cir. 2006) ("[D]eliberate indifference exists wholly independent of an optimal standard of care."); McMahon v. Beard, 583 F.2d 172, 174 (5th Cir. 1978). Morever, the federal constitution does not require even that an inmate's medical care be free from negligence or medical malpractice. Hall v. Thomas, 190 F.3d 693, 697-98 (5th Cir. 1999); see also Kelly v. Gusman, Civ. Action No. 07-611, 2007 WL 2007992, at *4 (E.D. La. July 5, 2007); Cerna v. Texas Tech Medical Staff, No. 2:03-CV-0322, 2004 WL 42602, at *2 (N.D. Tex. Jan. 7, 2004). Therefore, the determinative issue is not whether the medical examinations plaintiff received from Forbes and Seal were subpar in some respect; rather, again, it is only whether his serious medical needs were met with deliberate indifference. Because it is evident that there was no deliberate indifference in this case, Forbes and Seal are entitled to judgment as a matter of law with respect to plaintiff's federal claims against them for their examinations of plaintiff after the use of the chemical sprays.

---

[17] Rec. Docs. 34-3, pp. 3-4.

[18] Rec. Doc. 35 (Manual Attachment), Disc Nos. 1 and 2.

Plaintiff next claims that Bruce Stewart denied him adequate medical care on December 15, 2010, for injuries he sustained the prior day. Again, the medical records disprove that claim. Those records show that plaintiff submitted a "Health Care Request Form" stating: "sharp pain in upper back - right side when exhaling & inhaling, constand [sic] headache, left hand is completely nomb [sic] & swollen." In response to that request, plaintiff was examined by Stewart on December 15, 2010, at 8:00 a.m. His assessment and comments were as follows: "No swelling observed. Adle [sic] to move without difficulty. No objective [illegible] c/o with (L) hand swelling. Observed no swelling, no redness, no objective finding."[19] Therefore, Stewart did not ignore plaintiff's complaints; on the contrary, he performed an examination and recorded his findings. The fact that he found plaintiff's medical complaints to be without merit does not mean that he acted with deliberate indifference. At best, plaintiff could perhaps argue that Stewart was negligent in his examination or committed medical malpractice. However, as previously noted, negligence or medical malpractice alone are insufficient to support a federal claim. Accordingly, the claim against Stewart must be dismissed.

Plaintiff also claims that Bruce Forbes, Kimberly Warner, and Dr. Dennis LaRavia violated plaintiff's rights by giving prior permission to use chemical spray on him despite his known history of asthma.[20] The defendants concede that plaintiff has asthma,[21] and the scant medical records attached to the defendants' motion for summary judgment are insufficient for the Court to assess the seriousness of that condition. Therefore, disputed issues of material fact remain regarding whether

---

[19] Rec. Doc. 34-3, p. 1.

[20] Rec. Doc. 1, p. 16.

[21] Rec. Doc. 34-1, p.1.

plaintiff's asthma constituted a serious medical need and whether that need was met with deliberate indifference by these defendants. Accordingly, the defendants are not entitled to summary judgment with respect to this claim.

Lastly, plaintiff claims that Dr. LaRavia, Bruce Stewart, Bruce Forbes, and Wendy Seal were deliberately indifferent to various other serious medical needs alleged by plaintiff.[22] Again, the medical records provided to this point are insufficient for the Court to assess these claims. Therefore, disputed issues of material fact remain regarding whether plaintiff's other various medical conditions constituted serious medical needs and whether those needs were met with deliberate indifference. Accordingly, the defendants are not entitled to summary judgment with respect to these claims.

## F. Unconstitutional Conditions of Confinement

Plaintiff next complains that he was briefly housed next to the cell of a mentally ill inmate who had a foul odor. Plaintiff claims that housing him near such an inmate constituted cruel and unusual punishment. It did not. "There is no case precedent awarding a prisoner judicial relief under the Eighth Amendment for having to temporarily endure a bad odor. While certainly uncomfortable, such minor inconveniences cannot be grounds for judicial relief." Burgos v. Canino, 641 F. Supp. 2d 443, 460 (E.D. Pa. 2009), aff'd, 358 Fed. App'x 302 (3rd Cir. 2009); see also Jones v. Goord, 435 F. Supp. 2d 221, 237 (S.D.N.Y. 2006) ("[P]laintiffs' complaints regarding having to deal with a cellmate's odors do not rise to the level of a constitutional violation. Sharing a cell with an individual with body odor, or an individual who does not bathe frequently, is a far cry from the 'wanton and unnecessary infliction of pain' against which the Eighth Amendment protects.");

---

[22] Rec. Doc. 1, pp. 14-15.

McBride v. Illinois Department of Corrections, 677 F. Supp. 537, 539 (N.D. Ill. 1987) ("McBride is disturbed mostly by odors – odors from his cellmate, odors from the toilet and odors from the spray used to control roach infestation. No doubt such odors are at times disagreeable, but they do not typify the shockingly inhumane or barbarous conditions generally characterized as cruel and unusual punishment. Given the close confines of a prison cell, such assaults on the olfactory nerve are unavoidable.").

Plaintiff also complains about the noise caused by the inmate talking to himself. However, there is no evidence that such noise was intentionally designed to deprive plaintiff of sleep, and, again, his contentions are insufficient to state a constitutional claim. Johnson v. Texas Board of Criminal Justice, 281 Fed. App'x 319, 322 (5th Cir. 2008); Johnson v. Thaler, No. 99-20222, 1999 WL 1131941, at *1 (5th Cir. Nov. 12, 1999); Lacy v. Collins, No. 95-20033, 1995 WL 535114, at *4 (5th Cir. Aug. 8, 1995); Honshul v. Foti, No. 94-30723, 1995 WL 153425, at *3 (5th Cir. Mar. 30, 1995); Rue v. Gusman, Civ. Action No. 09-6480, 2010 WL 1930936, at *7 (E.D. La. May 11, 2010).

### G. Denial of Due Process in Disciplinary Proceedings

In the complaint, plaintiff states in passing that "prisoners [sic] right to due process was denied in connection with disciplinary charge stemming from refusal to comply."[23] It is unclear whether plaintiff meant this as a separate claim for relief; however, if so, that claim must be dismissed.[24] Such conclusory allegations of due process violations simply are not cognizable. See,

---

[23] Rec. Doc. 1, p. 7.

[24] The defendants have not addressed this arguable claim in their motion. However, as previously noted, the Court has the authority to dismiss a claim *sua sponte* pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b). See *supra* note 14.

e.g., Jackson v. Mizzel, 361 Fed. App'x 622, 626-27 (5th Cir. 2010). To state a cognizable claim on which relief may be granted, a plaintiff must "plead enough facts to state a claim to relief that is plausible on its face. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." In re Katrina Canal Breaches Litigation, 495 F.3d 191, 205 (5th Cir. 2007) (citation, footnote, and quotation marks omitted). The United States Supreme Court has explained:

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009) (citations and quotation marks omitted). Clearly, plaintiff's brief and conclusory allegation concerning this matter falls far short of what is required under the foregoing jurisprudence.

## H. Failure to Remedy Grievances

Plaintiff also complains that his administrative grievances were ignored by Warden Tanner. However, even if that is true, such unresponsiveness is not actionable. An inmate does not have a constitutional right to an adequate and effective grievance procedure or to have his complaints investigated and resolved to his satisfaction. Propes v. Mays, 169 Fed. App'x 183, 184-85 (5th Cir. 2006); Geiger v. Jowers, 404 F.3d 371, 373-74 (5th Cir. 2005); Davis v. St. Charles Parish Correctional Center, Civ. Action No. 10-98, 2010 WL 890980, at *5 (E.D. La. Mar. 8, 2010); Carter v. Strain, Civ. Action No. 09-15, 2009 WL 3231826, at *3 (E.D. La. Oct. 1, 2009); Tyson v. Tanner, Civ. Action No. 08-4599, 2009 WL 2883056, at *5 (E.D. La. Aug. 25, 2009); George v. Travis, Civ.

16

Action No. 07-986, 2007 WL 1428744, at *7 (E.D. La. May 10, 2007); Mahogany v. Miller, Civ. Action No. 06-1870, 2006 WL 4041973, at *1 (E.D. La. Aug. 3, 2006), appeal dismissed, 252 Fed. App'x 593 (5th Cir. 2007). Therefore, this claim must be dismissed.[25]

The Court notes that plaintiff also alleges in his complaint that Warden Tanner "shares responsibility for actions and inactions for persons under his authority."[26] However, to the extent that plaintiff is attempting to hold Tanner vicariously liable for constitutional violations allegedly committed by his subordinates, that attempt cannot succeed. "Under section 1983, supervisory officials are not liable for the actions of subordinates on any theory of vicarious liability." Thompkins v. Belt, 828 F.2d 298, 303 (5th Cir. 1987); see also Oliver v. Scott, 276 F.3d 736, 742 (5th Cir. 2002) ("Section 1983 does not create supervisory or *respondeat superior* liability."); Evans v. Gusman, Civ. Action No. 08-703, 2008 WL 2223281, at *2 (E.D. La. May 23, 2008).

### III. State Law Claim

Although plaintiff's complaint indicates that he is invoking this Court's supplemental jurisdiction to assert claims under state law, the only state law claim clearly stated in the complaint is that against Sgts. David Alford and Clifford Turner for the use of corporal punishment, i.e. dragging plaintiff naked down the tier, in violation of La.Rev.Stat.Ann. § 15:829.[27] The defendants' motion addresses only the portion of this claim concerning plaintiff's nakedness. Because the claim

---

[25] The defendants did not address this claim in their motion. However, again, the Court has the authority to dismiss the claim *sua sponte* pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b). See *supra* note 14.

[26] Rec. Doc. 1, p. 5.

[27] Rec. Doc. 1, p. 7.

17

has not been addressed in context and in its entirety, the Court cannot find that the defendants have established that they are entitled to judgment as a matter of law with respect to the claim.

Accordingly,

**IT IS ORDERED** that the motion for summary judgment, Rec. Doc. 34, is **DENIED IN PART AND GRANTED IN PART**.

**IT IS ORDERED** that the motion is **DENIED** with respect to the following claims: (1) the individual-capacity federal claim against Ronnie Seal for excessive force; (2) the individual-capacity federal claims against Bruce Forbes, Kimberly Warner, and Dr. Dennis LaRavia for deliberate indifference to serious medical needs for approving the use of chemical spray on plaintiff despite his known history of asthma; (3) the individual-capacity federal claims against Dr. Dennis LaRavia, Bruce Stewart, Bruce Forbes, and Wendy Seal for deliberate indifference to plaintiff's remaining serious medical needs; and (4) the state law claims against David Alford and Clifford Turner for the use of corporal punishment. Those claims will proceed to trial as scheduled.

**IT IS ORDERED** that the motion is **GRANTED** with respect to all other claims asserted and those claims are **DISMISSED WITH PREJUDICE**.

New Orleans, Louisiana, this eleventh day of January, 2012.

**DANIEL E. KNOWLES, III**
**UNITED STATES MAGISTRATE JUDGE**