# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**SYLVESTER MARTIN**                                        **CIVIL ACTION**

**VERSUS**                                                           **NO. 11-726-DEK**

**LT. RONNIE SEAL, ET AL.**

## ORDER AND REASONS

Plaintiff, Sylvester Martin, filed this lawsuit against Ronnie Seal, David Alford, Clifford Turner, Bruce Stewart, Bruce Forbes, Wendy Seal, Kimberly Warner, Dr. Dennis LaRavia, and Warden Robert Tanner.  Plaintiff asserted that the defendants violated his rights under both federal and state law during his incarceration at the B.B. "Sixty" Rayburn Correctional Center.  The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge.[1]

The defendants filed a motion for summary judgment,[2] which the Court granted in part and denied in part.[3]  Specifically, the Court granted the motion except with respect to the following claims:  (1) the individual-capacity federal claim against Ronnie Seal for excessive force; (2) the individual-capacity federal claims against Bruce Forbes, Kimberly Warner, and Dr. Dennis LaRavia for deliberate indifference to serious medical needs for approving the use of chemical spray on plaintiff despite his known history of asthma; (3) the individual-capacity federal claims against Dr. Dennis LaRavia, Bruce Stewart, Bruce Forbes, and Wendy Seal for deliberate indifference to

---

[1]    Rec. Doc. 14.

[2]    Rec. Doc. 34.

[3]    Rec. Doc. 43.

plaintiff's remaining serious medical needs; and (4) the state law claims against David Alford and Clifford Turner for the use of corporal punishment.  On appeal, the United States Fifth Circuit Court of Appeals held that this Court erred in denying summary judgment on the medical claims and rendered judgment in favor of the defendants on those claims.   The Court of Appeals also reversed the denial of summary judgment on the excessive force claim and remanded the case for reconsideration of that claim.[4]  At plaintiff's request, the state law claims against Alford and Turner were subsequently dismissed.[5]

In light of the foregoing, the only claim which currently remains is the individual-capacity federal claim against Ronnie Seal for excessive force.  For the following reasons, the Court now grants the motion the motion for summary judgment with respect to that claim and dismisses that claim with prejudice.

Summary Judgment Standards

In reviewing a motion for summary judgment, the Court may grant the motion when no genuine issue of material fact exists and the mover is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  There is no "genuine issue" when the record taken as a whole could not lead a rational trier of fact to find for the nonmovant.  Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

"Procedurally, the party moving for summary judgment bears the initial burden of informing the district court of the basis for its motion, and identifying those portions of the record which it

---

[4]     Rec. Doc. 70; Martin v. Seal, 510 Fed. App'x 309 (5th Cir. 2013).

[5]     Rec. Doc. 80.

believes demonstrate the absence of a genuine issue of material fact." Taita Chemical Co., Ltd. v. Westlake Styrene Corp., 246 F.3d 377, 385 (5th Cir. 2001) (quotation marks and brackets omitted). The party opposing summary judgment must then "go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986) (quoting Fed.R.Civ.P. 56); see also Provident Life and Accident Ins. Co. v. Goel, 274 F.3d 984, 991 (5th Cir. 2001). The Court has no duty to search the record for evidence to support a party's opposition to summary judgment; rather, "[t]he party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which the evidence supports his or her claim." Ragas v. Tennessee Gas Pipeline Co., 136 F.3d 455, 458 (5th Cir. 1998). Conclusory statements, speculation, and unsubstantiated assertions are not competent summary judgment evidence and will not suffice to defeat a properly supported motion for summary judgment. Id.; Douglass v. United Servs. Auto. Ass'n, 79 F.3d 1415, 1429 (5th Cir. 1996).

<u>Plaintiff's Excessive Force Claim</u>

Plaintiff claims that his federal constitutional rights were violated by defendant Ronnie Seal's use of chemical spray on December 14, 2010. Seal argues that he is entitled to qualified immunity with respect to that claim.

Concerning qualified immunity, the United States Fifth Circuit Court of Appeals has explained:

> The doctrine of qualified immunity protects government officials from civil damages liability when their actions could reasonably have been believed to be legal.

3

> Qualified immunity protects all but the plainly incompetent or those who knowingly violate the law, and courts will not deny immunity unless existing precedent placed the statutory or constitutional question beyond debate.  Therefore, a plaintiff seeking to overcome qualified immunity must show:  (1) that the official violated a statutory or constitutional right, and (2) that the right was clearly established at the time of the challenged conduct.  A court has discretion to decide which prong to consider first.

Whitley v. Hanna, 726 F.3d 631, 638 (5th Cir. 2013), cert. denied, 134 S. Ct. 1935 (2014).  Where, as here, the qualified immunity defense has been raised, the burden shifts to the plaintiff to rebut that defense.  Harris v. Serpas, 745 F.3d 767, 771 (5th Cir. 2014).

The constitutional right at issue in this case is the right to be protected against cruel and unusual punishment.  See U.S. Const. amend. VIII ("Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted.").  "[W]henever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry is ... whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm."  Hudson v. McMillian, 503 U.S. 1, 6 (1992) (quotation marks omitted).  The United States Fifth Circuit Court of Appeals has explained:

> Several factors are relevant in the inquiry whether unnecessary and wanton infliction of pain was used in violation of a prisoner's eighth amendment right to be free from cruel and unusual punishment. These include:
>
> 1. the extent of the injury suffered;
> 2. the need for the application of force;
> 3. the relationship between the need and the amount of force used;
> 4. the threat reasonably perceived by the responsible officials; and
> 5. any efforts made to temper the severity of a forceful response.

Hudson v. McMillian, 962 F.2d 522, 523 (5th Cir. 1992).

In its original opinion denying summary judgment with respect to the excessive force claim, this Court found that, based on record before it at that point, questions remained as to whether *any* use of force had been required in this case, in light of the fact that plaintiff was already secured in a one-man suicide-watch cell and no video surveillance recordings had been provided showing the circumstances which led to the first use (or first two uses, depending on whether there were two or three separate incidents) of the chemical spray.  On appeal, the Court of Appeals reversed, finding that this Court's analysis was flawed because the other Hudson factors should also have been considered.  Specifically, the Court of Appeals held:

> Appellants claim that the district court erred by not considering all of the Hudson factors in its denial of qualified immunity.  While the district court evaluated the need for Lt. Seal's application of chemical spray to detain Martin, it did not expressly consider any of the other factors that, under Hudson, could bear on the court's finding of excessive force.  More specifically, the district court did not assess the extent of the injury suffered by Martin, the relationship between the need for force and the type of force actually used (chemical spray), the threat perceived by Lt. Seal and the other officers, or the efforts made by Lt. Seal and the medical personnel to temper the severity of the force used.  While there may be a set of facts under which a single Hudson factor is so compelling as to overshadow the others and alone warrant a finding of excessive force, that is not the case here. In other words, although the district court was not required to conduct an extensive analysis of each Hudson factor, its failure to even acknowledge any of the other four factors when Appellants clearly pleaded facts relevant to those issues resulted in a decision that unjustifiably prioritizes one Hudson factor – the alleged need for force against Martin – above all others.

Martin v. Seal, 510 Fed. App'x 309, 312-13 (5th Cir. 2013)

On remand, this Court directed the parties to file supplemental memoranda addressing in detail each of the five <u>Hudson</u> factors and supplying any evidence they wished for the Court to consider with respect to those factors.[6]  The parties have done so.[7]

For the following reasons, having now considered each of the <u>Hudson</u> factors in light of the parties' supplemental arguments and evidence, the Court finds that all of those factors clearly weigh in the defendant's favor, thereby precluding a finding that an Eighth Amendment violation occurred.

Extent of the Injury Suffered

The United States Supreme Court has held:

> When prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated.  This is true whether or not significant injury is evident.  Otherwise, the Eighth Amendment would permit any physical punishment, no matter how diabolic or inhuman, inflicting less than some arbitrary quantity of injury.

<u>Hudson v. McMillian</u>, 503 U.S. 1, 9 (1992) (citation omitted).  However, the Supreme Court subsequently clarified the foregoing statement, explaining:

> This is not to say that the absence of serious injury is irrelevant to the Eighth Amendment inquiry.  The extent of injury suffered by an inmate is one factor that may suggest whether the use of force could plausibly have been thought necessary in a particular situation.  The extent of injury may also provide some indication of the amount of force applied.

<u>Wilkins v. Gaddy</u>, 559 U.S. 34, 37-38 (internal citations, quotation marks, and brackets omitted).

Plaintiff argues that he did in fact suffer an injury from the use of the chemical spray.  It is undisputed that he suffers from asthma.  He alleges that, as a result of that preexisting condition, the

---

[6]   Rec. Doc. 72.

[7]   Rec. Docs. 73, 82, 83, and 84.

6

chemical spray caused him to have difficulty breathing and to lose consciousness. Even if the Court assumes that the chemical spray did in fact trigger an asthma attack, the medical evidence indicates that the effects were minor[8] and the video records also refute that there was any prolonged adverse effects, showing that plaintiff was back on his feet and quite hale and hearty soon after the sprayings.[9] As the Fifth Circuit has already noted in its review of this case on appeal:

> While Martin contends that he experienced trouble breathing after being sprayed, the prison records and video footage of the two recorded incidents suggest that any physical harm Martin suffered was temporary and *de minimis*. Furthermore, in spite of Martin's claim that he suffered lasting injuries (aggravated asthma symptoms and back pain) as a result of the sprayings, prison records demonstrate that, in the months following the incident, Martin was evaluated by medical personnel who determined that he was not injured and did not need additional treatment.

Martin, 510 Fed. App'x at 311.

---

[8]   Rec. Doc. 34-3, pp. 3-4.

[9]   Rec. Doc. 35 (Manual Attachment), Disc No. 3. As the defendant points out in his supplemental memorandum, the United States Fifth Circuit Court of Appeals has noted:

> Although we review evidence in the light most favorable to the nonmoving party, we assign greater weight, even at the summary judgment stage, to the facts evident from video recordings taken at the scene. Scott v. Harris, 550 U.S. 372, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007). A court of appeals need not rely on the plaintiff's description of the facts where the record discredits that description but should instead consider "the facts in the light depicted by the videotape." Id. at 381, 127 S.Ct. 1769.

Carnaby v. City of Houston, 636 F.3d 183, 187 (5th Cir. 2011).
     Plaintiff appears to suggest that the video records are misleading, opining that his seeming hyperactivity after the sprayings could have resulted from the stimulating effects of his inhaler. Rec. Doc. 82, p. 15. In support of that contention, he offers print-outs of information from Wikipedia and other internet websites. However, those print-outs do not adequately address whether the stimulating effects of an inhaler could have produced level of hyperactivity displayed in the video records or masked other injuries. Further, in any event, uncorroborated internet information is not competent summary judgment evidence. See, e.g., Taylor v. Kerr-McGee Corp., Civ. Action No. 00-2102, 2006 WL 39260, at *3 (W.D. La. Jan. 6, 2005).

For these reasons, the Court finds that plaintiff's true injuries, if any, were minor and, therefore, this first factor weighs in the defendant's favor.

<u>Need for the Application of Force</u>

As for the need for the application of force, this Court noted in its original opinion that it was unclear whether any use of force was required in this case, in light of the fact that plaintiff was already secured in a one-man suicide-watch cell. However, upon further reflection, the Court finds that it was perhaps too dismissive of the discretion that must be afforded to prison officials. Clearly, in light of the circumstances, plaintiff posed no immediate physical threat to Seal. Nevertheless, force may properly be used for purposes other than simply protecting oneself from an imminent physical attack. For example, the use of force may be appropriate to restore discipline, and, as the Fifth Circuit noted in its opinion concerning the instant case, it is undisputed that plaintiff was refusing to follow orders. <u>Martin</u>, 510 Fed. App'x at 310 n.1 and 313 ("[P]rior to being sprayed at all, Martin ignored multiple orders to remove his clothes after being put on suicide watch, and later ignored orders to stop racking his cell bars and jumping on his bed. In his brief, Martin admits that he resisted these orders."). The use of chemical spray has repeatedly been held to be appropriate when necessary to control a "recalcitrant inmate." <u>See, e.g.</u>, <u>Jones v. Shields</u>, 207 F.3d 491, 496 (8th Cir. 2000); <u>Williams v. Benjamin</u>, 77 F.3d 756, 763 (4th Cir. 1996). This is true even if the inmate is in his cell or otherwise restrained. <u>See, e.g.</u>, <u>Soto v. Dickey</u>, 744 F.2d 1260, 1270 (7th Cir. 1980). As the Seventh Circuit explained in <u>Soto</u>:

> When an order is given to an inmate there are only so many choices available to the correctional officer. If it is an order that requires action by the institution, and the inmate cannot be persuaded to obey the order, some means must be used to compel compliance, such as a chemical agent or physical force. While experts who

testified on behalf of the plaintiffs, suggested that rather than seek to enforce orders, it was possible to leave the inmate alone if he chooses not to obey a particular order, and wait him out, experience and common sense establish that a prison cannot be operated in such a way.

Discipline in a maximum security correctional institution no doubt is difficult, but it is essential if the prison is to function and provide for the care, safety and security of the staff and inmates. Services to provide food, clothing, health, medical, cleaning, laundry and all other services would come to end without discipline. Mob rule would take over. There would not, and could not, be any protection for staff or inmates. Orders given must be obeyed. Inmates cannot be permitted to decide which orders they will obey, and when they will obey them. Someone must exercise authority and control. One can quickly reason what would happen in a maximum security prison without proper discipline.

Id. at 1267. Therefore, upon further reflection and for the reasons noted in Soto, the Court concludes that *some* application of force was necessary and appropriate to restore discipline in the face of plaintiff's continued disobedience. Accordingly, the Court finds that this second factor likewise weighs in the defendant's favor.

Relationship between the Need the Application of Force and the Amount of Force Used

Based on the foregoing finding that some amount of force was needed to restore discipline in this case, the next question which arises is whether the amount of force used bore a reasonable relationship to the need. Here, rather than entering plaintiff's cell and engaging in forceful physical contact, Seal used a chemical spray to gain submission. It is clear that a limited application of chemical spray "to control a recalcitrant inmate constitutes a 'tempered response by prison officials' when compared to other forms of force." Jones v. Shields, 207 F.3d 491, 496 (8th Cir. 2000) (quoting Williams v. Benjamin, 77 F.3d 756, 763 (4th Cir. 1996)); accord Ash v. Global Expertise in Outsourcing, Inc., Civ. Action No. 06-1854, 2007 WL 988923, at *1 (W.D. La. Feb. 14, 2007) ("The use of a chemical agent is a reasonable alternative to a physical confrontation between an

inmate and prison guards, for compelling compliance from an inmate who cannot be persuaded to obey an order.") (adopted by Minaldi, J., on April 2, 2007).   Plaintiff does not suggest, and this Court cannot imagine, what lesser type of force would have been effective here.[10] For these reasons, the Court finds that this third factor also weighs in the defendant's favor.

<u>Threat Reasonably Perceived by the Responsible Officials</u>

This <u>Hudson</u> factor is the weakest for the defendant; however, it still clearly does not weigh in plaintiff's favor.  There is no competent summary judgment evidence, such an affidavit from Seal, detailing what threat, if any, he actually perceived.  It is unlikely that he thought there was any imminent physical danger posed by a naked prisoner secured in a bare suicide-watch cell. Nevertheless, as already noted herein, that is not the only type of threat which must be considered. Although alone in his cell, plaintiff was on a tier occupied by other prisoners.  Those prisoners could have been emboldened to likewise misbehave had plaintiff been allowed to engage in continuous disrespectful and disruptive behavior without adverse consequence.   While a single prisoner's flagrant disobedience might pose no immediate threat, it obviously could serve as a catalyst for more widespread misbehavior which could quickly escalate out of control.   Therefore, on balance, this fourth factor also weighs in the defendant's favor.

---

[10]   As an aside, the Court notes that it is unclear precisely how many times plaintiff was sprayed.  However, any factual dispute as to that issue does not preclude summary judgment, because the ultimate number of sprayings is not dispositive.  It is undisputed that after the initial spraying(s), plaintiff continued to refuse to obey orders.  Therefore, a further use of force was necessary, and the fact that Seal elected not to escalate the severity of force used despite the continued disobedience weighs in his favor, not against him.  The bottom line is this:  regardless of how many times plaintiff was sprayed, the sprayings ceased once he became compliant.

Efforts Made to Temper the Severity of a Forceful Response

The record clearly reflects that Seal attempted to temper the severity of the force used. Before administering the chemical spray, he checked with the medical staff and was told that plaintiff's condition did not preclude the use of the spray.  Moreover, after the sprayings, Seal did not simply walk away and leave plaintiff to suffer.  Rather, plaintiff was removed from his cell and medical personnel were summoned to evaluate whether medical care was required.  Therefore, this fifth factor also weighs in the defendant's favor.

In light of the foregoing, the Court finds that plaintiff's excessive force claim fails on both prongs on the qualified immunity analysis.

With respect to the first prong, the Court finds that, under the specific facts of this particular case and for the reasons already discussed in detail, Seal used force in a good-faith effort to maintain or restore discipline, not maliciously and sadistically to cause plaintiff harm.  Therefore, there was no constitutional violation.

However, out of an abundance of caution, the Court additionally notes that plaintiff's claim fails on the second prong as well.  On that second prong, a plaintiff must show that the right was clearly established at the time of the challenged conduct.  In making that showing, a plaintiff need not identify a case "directly on point"; nevertheless, he still must show that existing precedent placed the constitutional question "beyond debate."  Ashcroft v. al-Kidd, 131 S. Ct. 2074, 2083 (2011). Plaintiff does not identify, and the undersigned is unaware of, a case with sufficiently analogous facts which would have placed Seal on notice that his use of chemical spray in these circumstances would violate the Eighth Amendment.  Accordingly, the required showing has not been made in this

case, especially in light of the cases cited herein which hold that use of chemical spray is appropriate when necessary to control a "recalcitrant inmate," even if that inmate is in his cell or otherwise restrained.

Simply put:  "Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments about open legal questions. When properly applied, it protects all but the plainly incompetent or those who knowingly violate the law."  Id. at 2085 (quotation marks omitted).  Because the Court cannot fairly say that either of those labels applies to Seal based on the undisputed facts in this case, he is entitled to qualified immunity in this instance.

Accordingly,

**IT IS ORDERED** that the motion for summary judgment, Rec. Doc. 34, is hereby **GRANTED** with respect to the sole remaining claim, i.e. the individual-capacity federal claim against Ronnie Seal for excessive force, and that claim is **DISMISSED WITH PREJUDICE**.

New Orleans, Louisiana, this twenty-fifth day of June, 2014.


**DANIEL E. KNOWLES, III**
**UNITED STATES MAGISTRATE JUDGE**

12